THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARL KNIGHT, Defendant-Appellant.

Second District    No. 2—98—0776

Opinion filed December 23, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Ronald E. Boyer, of Watseka, for appellant.

Timothy W. Johnson, State's Attorney, of Sycamore (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Earl Knight, appeals his conviction and sentence after a jury found him guilty of two counts of domestic battery (720

ILCS 5/12—3.2(a)(1), (a)(2) (West 1996)), and the trial court sentenced him to an extended term of four years' imprisonment. We reverse and remand.

The following facts are taken from the record. On September 17, 1997, the State charged the defendant by a three-count indictment. Count I alleged that the defendant committed aggravated criminal sexual assault (720 ILCS 5/12—14(a)(2) (West 1996)) in that the defendant, by the use of force, placed his penis into the vagina of K.T., a household member. Counts II and III alleged that the defendant committed domestic battery (720 ILCS 5/12—3.2(a)(1) (West 1996)) in that the defendant caused bodily harm to K.T., a household member (720 ILCS 5/12—3.2(a)(2) (West 1996)), and the defendant made physical contact of a provoking nature with K.T., a household member. The indictment alleged that the defendant committed these acts on or about September 16, 1997.

At the trial, K.T. testified that at the time of the alleged incident she lived with the defendant along with her 2-year-old son, Trevor, and the defendant's 10-year-old daughter, Angela. K.T. testified that on the afternoon of September 15, 1997, she picked the defendant up from work and they drove to a friend's, Jerry Setser's, house. K.T. and the defendant left Setser's house, returned home, and continued to consume alcohol and cocaine. The two then began to argue about sex. At about 2:30 a.m. on September 16, 1997, K.T. told the defendant that she could not have oral sex with her previous boyfriend because her mouth was not large enough. The defendant then became enraged and began beating her. According to K.T. the defendant grabbed the front of her shirt, threw her across the living room, banged her head on the floor, kicked and punched her, and pulled her up the stairs by her hands and wrists. The defendant then pulled K.T. into the bedroom and onto the bed, forcibly removed her clothes, and then forcibly had sexual intercourse with her. Afterwards, the defendant got K.T. an ice pack, woke Angela and Trevor, and carried K.T. to the defendant's car. The defendant then drove K.T. and the children to Setser's house, where Setser's live-in girlfriend drove K.T. to the hospital.

K.T. also testified, over defense counsel's objection, that on November 2, 1997, more than six weeks after the incident, the defendant confronted K.T. while she was sitting in her automobile. K.T. testified as follows: "[The defendant] walked up to my car and told me that if I ever slept with one of his friends again, he would break my legs and kill me, and he had already busted his legs."

On cross-examination, K.T. admitted that she had consumed alcohol on September 16, 1997, and had been consuming cocaine for "days on end." K.T. also stated that she had been taking the prescrip-

tion drug Prozac. Further, K.T. told the police that she had been battered, but she did not tell them that she had been sexually assaulted.

David Warner, the emergency room doctor who examined K.T., testified that K.T. told him that she had been battered by the defendant and forced into having sexual intercourse with him, but she also stated that she had not been raped. Dr. Warner also stated that he observed bruising on K.T.'s thighs and arms. According to Dr. Warner, K.T. had been taking Prozac, which had been prescribed to her previously. Prozac is a psychotropic drug prescribed for depression and other mental illnesses.

The defendant's testimony varied greatly from K.T.'s. The defendant testified that on the morning of September 15, 1997, he and K.T. argued about the defendant's daughter, Angela. K.T. told the defendant that she wanted Angela to be returned to her mother. They also argued that morning about finances. The defendant stated that he threatened to end his relationship with K.T. because she had spent money on drugs which was needed to pay a bill. After the defendant returned from work later that day, he took a bath. K.T. joined him, and they had consensual sexual intercourse. Later, between 9:30 and 10 p.m., K.T. left the house alone and did not return until 3:30 or 4 a.m. the next morning. When K.T. returned, she woke the defendant and told him that she needed help. The defendant stated that K.T. appeared pale and was shaking. The defendant carried K.T. to the car and drove her to Setser's house, where Setser's girlfriend drove K.T. to the hospital. The defendant denied that he beat K.T. or forced her to have sexual intercourse.

Bradley Smith, the defendant's friend, testified that, on the night of the incident, he saw K.T. in her car at 10:30 or 11. K.T. and two other people sat in K.T.'s car waiting for a stop light to change.

Frank Beierlotzer, a De Kalb County sheriff's deputy, testified that he spoke with the defendant on the morning of September 16, 1997, at the hospital. The defendant told Beierlotzer that he went to Setser's house to see K.T. but was told that K.T. was in the hospital. Beierlotzer also spoke with K.T., who stated that the defendant had battered her at about 3 a.m. that morning.

The jury found the defendant not guilty of aggravated criminal sexual assault and the lesser included offense of criminal sexual assault, but guilty of both counts of domestic battery. The trial court found the defendant eligible for an extended sentence based on the defendant's prior conviction and sentenced the defendant to four years' imprisonment. The trial court denied the defendant's posttrial motion and motion to reconsider sentence. The defendant filed this timely appeal.

On appeal, the defendant first contends that the trial court abused its discretion by admitting into evidence the defendant's alleged statement to K.T. that he would break K.T.'s legs and kill her if she slept with another of the defendant's friends. The trial court granted the State's motion to present this evidence to show the defendant's "consciousness of guilt." After the evidence was admitted, the trial court denied the defendant's motion for a mistrial. The defendant argues that the admission of this testimony was not relevant for any permissible purpose. The State contends that the testimony was properly admitted to show the defendant's intent to abuse K.T., his attitude toward K.T., a pattern of jealous behavior followed by violence, and his consciousness of guilt. We agree with the defendant.

■ Evidence of other crimes, threats, or bad acts is not admissible to show the defendant's character or propensity to commit crime or wrongful acts. *People v. Williams*, 274 Ill. App. 3d 598, 607 (1995). However, such evidence is admissible if it is relevant for any other purpose. *Williams*, 274 Ill. App. 3d at 607. Therefore, such evidence is admissible if it is relevant to show the defendant's state of mind, motive, or criminal intent. *Williams*, 274 Ill. App. 3d at 607. It is also admissible to show the pattern of criminal behavior, or *modus operandi*, so distinct that separate crimes are recognized as the work of the same person. *People v. Rose*, 198 Ill. App. 3d 1, 6-7 (1990).

■ We do not agree with the State's argument that the evidence at issue was properly admitted to show the defendant's intent to abuse K.T.. The defendant's state of mind was not in controversy. At trial, the defendant did not argue that he injured K.T. by mistake or that he lacked the requisite intent to commit the crime; rather, he testified that he was not present when K.T. was beaten. Further, the defendant's alleged November 2 acts did not show the defendant's consciousness of guilt. The statement referred to acts in the future, constituting the threat of an assault in the future for acts to be done in the future not related to the prosecution of this cause, and not to criminal acts committed by the defendant in the past.

We also do not believe that the evidence was properly admitted to show the defendant's motive. The State argues that the evidence shows that the defendant's jealousy triggered violent behavior. However, the connections between the two incidents are too tenuous to establish motive. The November 2, 1997, incident showed that the defendant did not want K.T. to sleep with any of his friends. Regarding the offense in question, the defendant allegedly beat and raped K.T. after she mentioned oral sex with a former boyfriend. However, there was no evidence that K.T.'s former boyfriend was one of the defendant's friends. The fact that the defendant had a jealous nature was not specific enough to establish motive for the crime at issue.

We also reject the State's argument that the testimony was admissible to show a pattern of conduct on the defendant's part. In order for this exception to apply, both crimes must share peculiar and distinctive common features so as to earmark both crimes as the defendant's handiwork. *Rose,* 198 Ill. App. 3d at 6-7. The facts of the November 2, 1997, incident and defendant's telling K.T. that he would break her legs and kill her if she slept with another of his friends differ substantially from the facts of the September 1997 incident for which the defendant was on trial, namely, defendant's beating K.T., dragging her to the bedroom, and forcibly having sexual intercourse with her. These crimes do not share "peculiar and distinctive common features so as to earmark both crimes as the handiwork" of the defendant. See *People v. Denny,* 241 Ill. App. 3d 345, 358-59 (1993). Although these incidents have some things in common, the similarity of conduct as a whole, not the uniqueness of any single factor, is the key to determining the presence of the *modus operandi* exception. See *Denny,* 241 Ill. App. 3d at 359.

The State cites *People v. Baptist,* 76 Ill. 2d 19 (1979), to support its position. However, *Baptist* is not controlling here. In *Baptist,* the trial court allowed evidence that, after the incident for which the defendant was charged and before the trial, the defendant threatened a witness by writing to the witness in a letter that if the witness's brother testified against the defendant the defendant would "have his brother and cousin do something to her family." *Baptist,* 76 Ill. 2d at 24. Our supreme court held that this evidence was properly admitted to show "consciousness of guilt." *Baptist,* 76 Ill. 2d at 27. The November 2, 1997, incident in the case at bar did not show consciousness of guilt. At the most, it showed consciousness of jealousy. There was no evidence that the defendant attempted to kill or threaten to kill a witness to prevent her from testifying. Rather, the defendant threatened K.T. to preclude her from sleeping with another of the defendant's friends. We fail to see how that establishes consciousness of guilt.

We conclude that the evidence of the November 2, 1997, incident was irrelevant for any purpose for which it was offered, and any other purpose we can think of, and that the jury likely considered it only as showing a propensity on defendant's part to commit crime. Accordingly, the trial court abused its discretion by admitting the evidence of the November 2, 1997, incident.

■ Having determined that the trial court committed error by admitting evidence of another crime, we must determine whether the error warrants reversal. "The erroneous admission of evidence of other crimes 'carries a high risk of prejudice and ordinarily calls for reversal.' " *People v. Placek,* 184 Ill. 2d 370, 388 (1998), quoting *People*

*v. Manning*, 182 Ill. 2d 193, 214 (1998). The improper admission of such evidence will warrant reversal only if the evidence was a material factor in the defendant's conviction such that without the evidence the verdict likely would have been different. *People v. Cortes*, 181 Ill. 2d 249, 285 (1998).

The record reveals that the evidence in the case at bar was not overwhelming. The defendant testified that K.T. left the house at 9:30 or 10 p.m. and returned at 3:30 or 4 a.m. When K.T. returned, she was crying and was injured. The defendant's version of the events was corroborated by the defendant's friend who testified that he saw K.T. sitting in a car between 10:30 or 11 p.m. with two other people. Thus, the verdict essentially turned on whether the jury believed the defendant's version of the events or K.T.'s. Accordingly, we cannot say that the jury would have found the defendant guilty without the admission of the improper evidence. Thus, the admission of the improper evidence warrants reversal.

Because defendant was prejudiced by the improper admission of evidence of another crime, he is entitled to a new trial. Further, we have reviewed the evidence and find that, although it was not overwhelming, it was sufficient to prove the defendant's guilt beyond a reasonable doubt. Therefore, double jeopardy principles do not bar a retrial, although this in no way constitutes a holding that is binding on retrial. See *People v. Williams*, 182 Ill. 2d 171, 193 (1998). Because of our disposition of this issue, we need not reach defendant's second contention regarding sentencing.

The judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GEIGER and RAPP, JJ., concur.