NOTICE

Decision filed 01/24/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 180241-U

NO. 5-18-0241

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 16-CF-327 |
| | ) | |
| BRIAN T. BURNS, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where there was no meritorious issue that (1) the State proved defendant guilty beyond a reasonable doubt, (2) defense counsel was ineffective, (3) the trial court erred in admitting evidence, and (4) the court abused its discretion in sentencing defendant, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the trial court's judgment.

¶ 2   Following a jury trial, defendant, Brian T. Burns, was found guilty of attempted aggravated kidnapping, solicitation to commit aggravated kidnapping, and conspiracy to commit aggravated kidnapping. The trial court sentenced him to 20 years' imprisonment for solicitation. Defendant appealed.

¶ 3   Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion. This

1

court provided defendant with ample opportunity to file a response, and he has done so. After reviewing the record and considering OSAD's motion, the supporting memorandum, and defendant's response, we agree that this appeal presents no issue of even arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                              BACKGROUND

¶ 5      In the summer of 2016, defendant was housed in the Saline County Detention Center, charged with murdering his wife. At that time, he began discussing with a cellmate, Mark Stricklin, a plan to have then State's Attorney Mark Henshaw kidnapped and held until he agreed to drop the murder charge against defendant.

¶ 6      Stricklin testified that defendant first discussed having his stepsons hurt because they were suing him for the wrongful death of their mother. Defendant asked Stricklin whether he knew anybody who could do the job. Later, defendant mentioned having Henshaw kidnapped. At that point, Stricklin contacted his lawyer, who relayed the message to someone in law enforcement.

¶ 7      Stricklin agreed to wear a wire and recorded several conversations with defendant. The pair also communicated in letters, which defendant would write in Stricklin's presence. They communicated in this way to avoid having their other cellmates overhear. The conversations and letters were often in code. For example, defendant referred to the kidnapping of Henshaw as a "roofing job."

¶ 8      Stricklin told defendant that he would contact a friend who could do the job, but in reality the "friend" was Detective David Blazier. Stricklin and defendant called Blazier from the jail to discuss details of the kidnapping plot. On cross-examination, Stricklin admitted that he was facing charges of predatory sexual assault and, while he had not been promised anything specific in exchange for his testimony, he hoped to receive favorable treatment.

2

¶ 9    Throughout the conversations, defendant expressed concern that he would be connected to the kidnapping plot. Defendant wanted Henshaw to be told that his patients and coworkers were the ones who hired the kidnapper, believing the charges against defendant to be false. Defendant worried that he would "never get out of prison," and he did not want to be another Drew Peterson. Defendant asked Stricklin repeatedly whether Stricklin thought the kidnapper could pull off the job and whether the risk of getting caught was too high. At one point, defendant became suspicious and frisked Stricklin for a wire.

¶ 10   Defense counsel argued that defendant was merely fantasizing or speaking hypothetically. Counsel maintained that Stricklin was the driving force behind the alleged plot, hoping to obtain some leverage to procure more favorable treatment on his own charges. The defense further emphasized that the plot had no chance of success and that Henshaw was never actually in danger.

¶ 11   The jury found defendant guilty. A presentence investigation report showed that, prior to the murder charge, defendant had no criminal history. The defense emphasized that defendant had been a local doctor, a church deacon, and a Sunday school teacher. The trial court sentenced him to 20 years' imprisonment, finding that the crime's inherent seriousness outweighed defendant's lack of criminal history. Defendant timely appealed.

¶ 12                                    ANALYSIS

¶ 13   OSAD contends that it can make no good-faith argument for reversing defendant's conviction or sentence. We agree.

¶ 14   OSAD first contends that there is no reasonably meritorious contention that the State failed to prove defendant's guilt beyond a reasonable doubt. When a defendant challenges on appeal the sufficiency of the evidence, we will reverse the conviction only if, after viewing the evidence in the light most favorable to the State, no " 'rational trier of fact could have found the essential

3

elements of the crime beyond a reasonable doubt.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for determining witness credibility. *People v. Evans*, 209 Ill. 2d 194, 211 (2004).

¶ 15    Defendant was charged with three inchoate offenses, the predicate for which was aggravated kidnapping. Kidnapping occurs when a person knowingly and secretly confines another against his or her will or by force or threat of imminent force carries another from one place to another with the intent to secretly confine him or her against his or her will. 720 ILCS 5/10-1(a) (West 2018); *People v. Quintana*, 332 Ill. App. 3d 96, 104 (2002). Kidnapping may be aggravated where, *inter alia,* the kidnapper attempts to ransom. 720 ILCS 5/10-2(a)(1) (West 2018). "Ransom" includes "money, benefit, or other valuable thing or concession." *Id.* § 10-2(a).

¶ 16    Here, the defense did not deny that defendant had the conversations that Stricklin testified about and recorded. The only real issue at trial was whether defendant was serious about having Henshaw kidnapped or was either fantasizing or going along with a conversation that Stricklin initiated. To this point, Stricklin testified that defendant first raised the idea of kidnapping Henshaw. After a lull of about a month, defendant raised the issue again. The pair made detailed arrangements for the proposed crime. Blazier testified that defendant gave him the go-ahead to carry out the plot.

¶ 17    Moreover, Stricklin testified that defendant was extremely concerned about his role in the plot being discovered and took elaborate precautions to avoid it. From this, the jury could reasonably conclude that defendant viewed the discussions as more than just fantasizing or exploring hypothetical scenarios, and really intended to have Henshaw kidnapped.

¶ 18    It is true that the primary evidence against defendant came from Stricklin, a jailhouse informant. Stricklin himself was not beyond reproach. He had a criminal history and was facing

4

serious charges, providing him with a motive to aid law enforcement in the hope of receiving favorable treatment on his own charges. Although the testimony of a jailhouse informant should be viewed cautiously, the credibility of a such an informant, as with any other witness, is a question for the jury. *People v. Belknap*, 2014 IL 117094, ¶ 55 (citing *People v. Manning*, 182 Ill. 2d 193, 210 (1998)). The testimony of jailhouse informants is not to be viewed as inherently unbelievable. *Id.* Moreover, Stricklin's testimony was corroborated by Blazier and to some extent by defendant himself in the recorded conversations. There is no question that if the jury believed Stricklin and Blazier, the State proved beyond a reasonable doubt that defendant solicited a kidnapping.

¶ 19 OSAD next contends that there is no nonfrivolous argument that secretly recording defendant's conversations with Stricklin and Blazier violated his fifth or sixth amendment rights. Under the fifth amendment (U.S. Const., amend. V), suspects must be told that they have a right to counsel before a custodial police interrogation to effectuate that amendment's prohibition against being coerced into being a witness against oneself. *Miranda v. Arizona*, 384 U.S. 436, 471-72 (1966). However, that requirement does not apply to covert recordings by cellmates. *Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990) (essential ingredients of a police-dominated atmosphere and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate). Thus, defendant's fifth amendment right to counsel was not infringed here.

¶ 20 The broader sixth amendment (U.S. Const., amend. VI) right to counsel may be infringed where law enforcement agents, through a confidential informant, surreptitiously record the conversations of a defendant after he has been indicted. *Massiah v. United States*, 377 U.S. 201, 206 (1964). However, the *Massiah* rule does not apply to offenses other than the one for which the defendant has been indicted. *Texas v. Cobb*, 532 U.S. 162, 166-67 (2001) (sixth amendment

5

right is offense specific; it cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced).  Here, defendant was in custody for the murder of his wife.  The recordings related to a clearly distinct offense occurring after the initial murder.  Thus, the secret recordings did not violate defendant's sixth amendment right to counsel.

¶ 21    OSAD next contends that there is no meritorious argument that defense counsel was ineffective.  To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *People v. Cherry*, 2016 IL 118728, ¶ 24 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 22    OSAD observes that the jury was allowed to hear—without objection—evidence that defendant also discussed having his sons in Texas kidnapped to dissuade them from pursuing a civil suit against him.  Generally, evidence of other crimes, threats, or bad acts is not admissible to show the defendant's character or propensity to commit crime or wrongful acts.  *People v. Knight*, 309 Ill. App. 3d 224, 227 (1999).  Such evidence may, however, be admissible if relevant for some other purpose.  *Id.*

¶ 23    Even if counsel could have successfully objected to this evidence, the failure to do so did not establish his ineffectiveness.  OSAD speculates that counsel may have had a strategic reason for failing to object.  See *People v. Perry*, 224 Ill. 2d 312, 344 (2007) (decisions regarding " 'what matters to object to and when to object' " are matters of trial strategy (quoting *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997))).  In any event, however, in light of the other evidence detailed above, defendant was not prejudiced.  See *People v. Griffin*, 178 Ill. 2d 65, 74 (1997) ("[I]f the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally

6

deficient."). The evidence included clear and consistent testimony by Stricklin and Detective Blazier, as well as the letters defendant wrote and his recorded calls. In light of this evidence, there is no reasonable probability that the jury would have acquitted the defendant had it not heard evidence that he also discussed having his stepsons kidnapped.

¶ 24 OSAD further contends that there is no arguably meritorious contention that the trial court reversibly erred in its evidentiary rulings. OSAD lists three possible issues that defendant could conceivably raise.

¶ 25 OSAD first notes that the court overruled a defense objection to admitting defendant's handwritten letters. Counsel argued that the letters were irrelevant and that the State failed to lay a proper foundation.

¶ 26 Evidentiary rulings are within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Here, the letters went to the heart of the offense for which defendant was on trial. Thus, as OSAD contends, they could hardly have been more relevant. Moreover, the State laid a proper foundation as Stricklin testified that defendant wrote the letters in his presence. The "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Sept. 17, 2019). Such evidence may include testimony by a witness with knowledge that the evidence is what it is claimed to be. Ill. R. Evid. 901(b)(1) (eff. Sept. 17, 2019). Thus, Stricklin's testimony was sufficient to satisfy the relatively minimal foundational requirement.

¶ 27 OSAD next observes that defense counsel wanted to show that Stricklin's pending charges involved the sexual assault of a minor (rather than an adult). Generally, a witness may not be impeached with evidence of arrests or pending indictments to show his bad character. *People v.*

7

*Triplett*, 108 Ill. 2d 463, 475 (1985). However, showing bias, interest, or motive to testify is also an accepted method of impeachment. *Id.* With this method of impeachment, " 'the fact that a witness has been arrested or charged with a crime may be shown or inquired into where *it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely.*' " (Emphasis in original.) *Id.* (quoting *People v. Mason*, 28 Ill. 2d 396, 401 (1963)). Thus, counsel achieved the goal of the impeachment by showing that Stricklin was facing serious charges. He admitted that he was motivated to implicate defendant in the hope of receiving favorable treatment on his own charges. The precise nature of those charges was irrelevant. Thus, the trial court did not err.

¶ 28    In any event, counsel did accomplish much the same thing when he asked Stricklin, "You pled not guilty of what you're accused of, as it relates to the children, right?" Stricklin responded in the affirmative, and the State did not object.

¶ 29    In its third point under this issue, OSAD contends that it cannot meritoriously argue that the trial court erred by allowing the State to show that defendant was facing charges for the murder of his wife. As noted, evidence of other crimes is inadmissible merely to show a defendant's character or propensity to commit crimes. *Knight*, 309 Ill. App. 3d at 227. However, such evidence is relevant if offered for some other purpose, such as motive. *Id.* Here, the motive for defendant's plot to kidnap Henshaw was to persuade him to drop the pending murder charge. Thus, evidence of that charge was highly relevant to motive. Indeed, the State's evidence of a plot to kidnap the state's attorney would have made little sense without knowledge that defendant had been charged with murder. Thus, the court properly allowed the evidence.

¶ 30    OSAD finally concludes that no meritorious contention exists that the trial court erred in sentencing defendant. The trial court must base its sentencing determination on the particular

8

circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). We presumptively defer to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the "cold" record. *Id.* Accordingly, we may not substitute our judgment for that of the trial court merely because we might have weighed the factors differently. *Id.* at 53-54. We will not disturb a sentence within the statutory range unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 31    Here, solicitation was a Class X felony by virtue of the underlying crime—aggravated kidnapping—being a Class X felony. 720 ILCS 5/8-1(c), 10-2(a)(1) (West 2018). Class X felonies are ordinarily punishable by 6 to 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2018). Defendant's 20-year sentence—slightly above the midpoint of that range—was certainly severe. Defendant had no prior convictions, was a doctor in the community, and was involved in his church. However, a "defendant's lack of a prior record is not necessarily the most persuasive consideration at sentencing; the seriousness of the crime has been called the most important factor to be considered in imposing sentence." *People v. Brown*, 250 Ill. App. 3d 767, 774 (1993). Here, the crime was undoubtedly serious, involving a plot to kidnap a sitting state's attorney. Thus, the crime threatened the integrity of the justice system itself. In light of the extraordinary seriousness of the crime, the sentence was not an abuse of discretion.

¶ 32    In his response, defendant states his belief that numerous meritorious issues exist, but specifically identifies only two. He first argues that the court erred by denying a motion for change of venue. However, no such motion, either oral or written, appears in the record, and defendant

does not specify the basis for any such motion. He notes the obvious fact that the victim was the Saline County State's Attorney and was likely known to courthouse personnel, but does not provide any specific facts to show that the case should have been moved to another county or that any specific judge should have recused himself.

¶ 33 Whether to grant a change of venue is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *People v. Fort*, 248 Ill. App. 3d 301, 309 (1993). A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. *People v. Faria*, 402 Ill. App. 3d 475, 482 (2010). Allegations of judicial bias or prejudice must be viewed in context and should be evaluated in terms of the trial judge's specific reaction to the events taking place. *Id.* The trial judge is in the best position to decide whether he or she is prejudiced against the defendant. *People v. Kliner*, 185 Ill. 2d 81, 169 (1998). The trial judge's decision will not be reversed absent an abuse of discretion. *Id.* A judge's possible acquaintance with a victim is not specifically listed as a basis for disqualification in the Code of Judicial Conduct. See Ill. S. Ct. R. 2.11 (eff. Jan. 1, 2023). And, as noted, defendant lists no specific statements or actions by the trial judge showing that a personal relationship with the victim affected the outcome of the trial.

¶ 34 Defendant's second issue is that defense counsel was ineffective. Defendant contends that counsel met with him only twice and failed to call any of the witnesses defendant suggested. As to the first point, assuming the truth of defendant's allegations, he does not explain how he was prejudiced by counsel's failure to meet with him more extensively. The case was not particularly complex, turning on the testimony of two witnesses, authenticated letters defendant wrote, and recorded conversations. The failure to allege prejudice thus defeats this claim. See *Griffin*, 178 Ill. 2d at 74.

¶ 35   As to the second point, defendant fails to name any of the proposed witnesses or to describe what their testimony might have been.  Decisions about whether to call certain witnesses are also strategic ones left to counsel's discretion.  *People v. Watson*, 2022 IL App (5th) 190427, ¶ 50; *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 48.  In the absence of specifics about how the witnesses' testimony might have affected the outcome, we cannot say that counsel was ineffective.

¶ 36                                    CONCLUSION

¶ 37   As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 38   Motion granted; judgment affirmed.