NOTICE
Decision filed 05/27/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231229-U

NO. 5-23-1229

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 16-CF-327 |
| | ) | |
| BRIAN T. BURNS, | ) | Honorable |
| | ) | Cord Z. Wittig, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The case is reversed and remanded where postconviction counsel failed to make the amendments necessary for the adequate presentation of defendant's claims.

¶ 2   Defendant, Brian Burns, appeals the circuit court's order dismissing his amended postconviction petition, arguing that postconviction counsel provided unreasonable assistance. He contends the unreasonable assistance arose due to postconviction counsel failing to attach affidavits to his amended postconviction petition. He further contends that the trial court erred in dismissing his claims because his trial counsel provided ineffective assistance because he prevented defendant from exercising his constitutional right to testify on his own behalf, failed to assert compulsion as an affirmative defense, and failed to call material witnesses that would have supported his defense. For the following reasons, we reverse and remand the case.

1

¶ 3                                          BACKGROUND

¶ 4      On September 16, 2016, defendant, Brian T. Burns, was charged, by information, with

solicitation of aggravated kidnapping (720 ILCS 5/10-2(a)(1), 8-1(a) (West 2016)), conspiracy to

commit aggravated kidnapping (*id.* §§ 10-2(a)(1), 8-2(a)), and attempt aggravated kidnapping in

violation of (*id.* §§ 10-2(a)(1), 8-4(a)). The counts were based on defendant's attempt to kidnap

the Saline County State's Attorney, Mike Henshaw, and hold him for ransom until defendant's

charges in his murder case, case No. 16-CF-90, were dismissed, in exchange for payment of $1,000

to the proposed kidnapper.

¶ 5      Defendant was originally represented by Nick Brown. However, on October 12, 2016,

defendant hired Bryan Drew to represent him in this matter. Defendant's jury trial began on May

10, 2017. Following the seating of the jury, the parties provided opening statements. Defense

counsel argued that defendant was never "going to kidnap the state's attorney" and no "money

ever changed hands." He stated that this was the first time defendant was in jail, but it was not the

"first rodeo" for defendant's cellmate, Mark Stricklin, who had "a lot of charges against him." He

stated that the jury would figure out "who's been leading the conversation" and "you'll see all

along who was doing this, who was setting it all up and why."

¶ 6      The second day of the trial began with testimony from defendant's July 2016 cellmate,

Mark Stricklin. He testified that defendant told him about his case and asked if anyone had heard

of Mike Henshaw. Stricklin stated that everyone was always mad at Henshaw because he was the

prosecutor. Stricklin testified that defendant initially asked about having defendant's two stepsons

injured while he was in jail because they were suing him for his assets based on the death of their

mother stemming from case No. 16-CF-90. However, later, according to Stricklin, defendant

2

moved from the stepsons to Henshaw and said he wanted Henshaw "kidnapped and held hostage" until defendant was released from jail.

¶ 7    Following that conversation, Stricklin stated that he contacted his attorney and was later contacted by members of law enforcement regarding defendant's statements. Stricklin provided law enforcement with copies of notes that he received from defendant regarding the proposed kidnapping and explained that they used notes so the other cellmates would not hear. In addition to the notes received from defendant, Stricklin agreed to wear a wire so law enforcement could record conversations between defendant and Stricklin as well as a telephone conversation with the proposed kidnapper. The notes between Stricklin and defendant, as well as the recorded conversations, were placed into evidence and published to the jury.

¶ 8    On cross-examination, Stricklin admitted that he was charged with criminal sexual assault, similar to his cellmate, Ronald Yarber, who was recently convicted on over 200 charges of the same crime. Defense counsel repeatedly questioned Stricklin about threats Stricklin allegedly made to defendant in order to get defendant to write the notes that were entered into evidence. Stricklin repeatedly denied that he threatened defendant. However, Stricklin did admit that one of his current pending charges included intimidation of a witness. Stricklin agreed that their third cellmate, Kevin Johnson, also had similar charges as Stricklin and Yarber and sent a letter to the sheriff's office stating that Stricklin told him that defendant wanted people killed. Stricklin agreed that defendant repeatedly stated that he did not want Henshaw to be hurt. Following Stricklin's testimony, court adjourned for the day.

¶ 9    On the third day, the jury instructions were addressed. At that time, there was a discussion about adding an instruction in the event defendant testified, but defense counsel stated that no

3

additional instruction was necessary. Defendant was present at that time and provided no comment disputing or protesting defense counsel's statement.

¶ 10    After the jury instructions were completed, the jury returned and testimony was provided by Detective David Blazier, who worked for the Saline County Sheriff's Office. Detective Blazier's testimony confirmed the majority of Stricklin's testimony and clarified dates when the investigation into the proposed kidnapping began. It further confirmed that Detective Blazier was playing the role as the proposed kidnapper on the telephone call with defendant. On cross-examination, Detective Blazier confirmed that Henshaw was never kidnapped, threatened, or bribed. He also agreed that no payment was ever made for the proposed kidnapping.

¶ 11    Following Detective Blazier's testimony, the State rested. Defense counsel moved for a directed verdict, which was denied.

¶ 12    Defendant was then asked if he understood that he had the right to testify, or not testify, and defendant confirmed that he understood. Defense counsel submitted a list of defendant's cellmates and defendant's bank statements that were admitted without objection and then rested. At no time did defendant object to any of trial counsel's actions or advise the court that he wanted to testify.

¶ 13    At closing argument, the State conceded that this was not a typical kidnapping case. The State argued that defendant wanted Henshaw taken somewhere and held against his will until Henshaw was forced to call the Assistant State's Attorney Jason Olson and tell him to dismiss the murder charges against defendant. Defense counsel argued that Stricklin, Yarber, and Johnson, all charged with similar offenses, "got together." When Stricklin saw Yarber get convicted of over 200 counts he called the sheriff saying, "hey, I got something" and thereafter, Stricklin set out the ground rules. He argued that the conversations between Stricklin and defendant were simply

4

discussing a fantasy, not a reality, and it was all a setup. He explained that Stricklin told Johnson that defendant was trying to hire people to kill people in the jail, so Stricklin became defendant's buddy and successfully worked with defendant to get Johnson moved from the cell. Thereafter, they began talking about the fantasy of having Henshaw kidnapped only for Stricklin to later claim it was a real plan to kidnap Henshaw. He argued that the entire ruse was set up by Stricklin to reduce his own criminal liability. Counsel further noted that while defendant repeatedly stated that he did not have funds to use for the alleged kidnapping, he did have sufficient funds, and they were not frozen as evidenced by the defendant's bank statements. He argued that defendant knew it was not real, had no intention of paying the money, and was smart enough to know that no one was going to kidnap the state's attorney "for $500." The jury instructions were read, and less than two hours later, the jury returned with guilty verdicts for all three charges.

¶ 14    On July 10, 2017, defense counsel moved to withdraw due to a "breakdown in communication." The motion was granted on July 25, 2017, and sentencing was scheduled for August 29, 2017. On August 29, 2017, defendant stated that he did not have an attorney or funds to obtain one. He further argued that his trial counsel never told him about presenting a statement in allocution, presenting witnesses at sentencing, and that he "never told me to take the witness stand. I wanted to take the witness stand." After completing an affidavit of assets and liabilities, counsel was appointed.

¶ 15    On January 22, 2018, defendant's posttrial counsel, Nathan Rowland, moved for a new trial, claiming the evidence was insufficient to find defendant guilty, the trial court's evidentiary rulings were erroneous, the trial court erroneously limited counsel's impeachment of Stricklin, and it erroneously granted the State's motion *in limine* that allowed the jury to be aware of defendant's underlying charges. The posttrial motion was denied, and a sentencing hearing was held.

5

¶ 16    At sentencing, the parties provided argument regarding aggravation and mitigation and defendant provided a statement of allocation. Therein, defendant stated, *inter alia*, that he received "poor legal advice by Mr. Drew telling me not to take the stand—I wanted to take the stand and tell them exactly what happened. They only got to hear the story of Mr. Stricklin and not actually what happened. If one puts themselves in my shoes, they get charged with a crime against my wife that I did not commit and put into a cell with a gentleman who was quite frightening. He told me his past about being in the mafia in south Chicago and being an enforcer, and therefore he says you need to bribe the state's attorney. *** And I said, no, I don't want to—I never used the word kidnap or bribe the state's attorney to drop charges on me. He went further to say that if I don't play along with his scenario that grave circumstances upon myself, bodily damage, because he was going to make a deal with the prosecution on his case *** to be held in the better light of the law. I was frightened. I did what I thought I should do. By talking to my attorney, Nick Brown, I got moved out of his cell for only three days and then placed back in there. I knew that he was being taped. I knew all about this. I told him I didn't want to be hurt. Never did I mention the word kidnapping. And I told my attorney, Nick Brown, that no money will change hands for this bribery of the state's attorney to drop these—these charges against me. I hope that the Court would not think that I'm so foolish to believe that for a small sum that the state's attorney is bribable, much less that he would accept a bribe of [a] small amount to drop charges on me. The whole thing is beyond recourse. I don't understand. *** And so[,] I should have taken the witness stand to try to tell exactly what happened and maybe the jury would have thought more

6

favorably that I don't want to kidnap or bribe anybody[,] and I never paid anybody to do such a foolish thing. *** And it's—and if I didn't go along with this entrapment I wouldn't be talking to you right now. I'd be a dead man because this is what *** would have happened to me."

Following defendant's statement, the trial court took a short break. Upon its return, the trial court sentenced defendant to 20 years' imprisonment on the solicitation charge (720 ILCS 5/8-1(a) (West 2016)), after finding the other two charges were lesser-charged offenses. On February 20, 2018, defense counsel moved to reduce the sentence. Following a hearing on April 3, 2018, the motion was denied.

¶ 17    Defendant timely appealed the judgment and conviction. Defendant's appellate counsel filed an *Anders* (see *Anders v. California*, 386 U.S. 738 (1967)) brief and on January 29, 2020, this court allowed defendant an opportunity to show why his appeal should not be dismissed or the judgment affirmed. In response, defendant sent correspondence addressing the court's denial of his motion to change venue and further stated, "My attorney, Bryan Drew, only saw me twice before the jury trial. *** He advised me not to take the stand? He failed to call any of my witnesses to verify my case?" Defendant asked this court to deny the motion to withdraw.

¶ 18    While his appeal remained pending, on January 14, 2021, defendant filed a *pro se* petition for postconviction relief. Therein, defendant argued that he was denied his right to the effective assistance of counsel where counsel failed to interview and call as witnesses two people who could have corroborated defendant's version of events. Defendant alleged that he told trial counsel Drew that Ron Yarber knew about the entrapment scheme and that he wanted trial counsel to have defendant's first attorney, Nick Brown, testify that defendant told him not to pay the money and have him removed from Stricklin's cell. He claimed that if Brown and Yarber had testified, the

outcome would have been different. Defendant further claimed that trial counsel failed to conduct a reasonable pretrial investigation or defense against the charges and the prosecutor knowingly used perjured testimony to obtain the conviction. He added that the trial court's limitation of trial counsel's impeachment of Stricklin was erroneous, that he should have been allowed to use a truth serum, the denial of his motion to change venue was erroneous, and further alleged a conflict of interest existed between the trial judge and the state's attorney. The trial court found the petition stated the gist of a constitutional claim, and appointed Allen Roe as postconviction counsel.

¶ 19    Defendant filed a second *pro se* petition for postconviction relief on July 12, 2021, that again claimed ineffective assistance of trial counsel stating, "Also failure to use documentary evidence, *i.e.*, Sticklin had testified against other defendants and that if he impeached the witness then he would receive favorable treatment." The petition further alleged that "counsel didn't interview witnesses whose testimony would buttress defense" and "defense counsel didn't even use entrapment in his arguments which the defendant begged him to do."

¶ 20    Over the next year, postconviction counsel Roe requested numerous continuances to allow him to file an amended petition and Rule 651(c) certificate. Ultimately, however, on February 22, 2022, Roe moved to withdraw prior to filing any amended petition. The motion was granted the next day and defendant was advised that new counsel would be appointed.

¶ 21    On March 2, 2022, Jonathan Turpin was appointed as defendant's new postconviction counsel. On October 11, 2022, the amended postconviction petition for relief was filed. The amended petition alleged that defendant's trial counsel was ineffective because defendant wished to present an affirmative defense of compulsion pursuant to section 7-11 of the Criminal Code of 2012 (720 ILCS 5/7-11 (West 2022)) based on Stricklin's threats of physical violence if defendant did not perform the affirmative actions which constituted the charges for which defendant was

8

convicted. The petition alleged that defendant's prior trial counsel, Nick Brown, sent correspondence to the Saline County jail that confirmed defendant was being threatened with physical harm by a cellmate who was interfering in defendant's case. The petition claimed that the letter misstated the circumstances and requested the wrong cellmate be removed, *i.e.*, removal of Ronald Yarber, not Stricklin. The petition further contended there was an agreement between the State and Stricklin for Stricklin's testimony and assistance in defendant's case. The petition also alleged that Sticklin threatened to kill defendant if he did not comply with Stricklin's wishes and defendant advised his trial counsel about the threats, provided the names of Nick Brown and Ronald Yarber to call as witnesses, but defense counsel did not submit a timely disclosure of defendant's affirmative defense and therefore waived the defense. Defendant alleged that he was unaware that trial counsel was not going to present the affirmative defense of compulsion and was not going to call defendant to testify on his own behalf at trial, until the trial concluded. Defendant alleged that he demanded trial counsel allow him to testify at trial and counsel neither investigated Yarber or Brown nor called them to testify at trial. The remainder of the petition claimed prejudice from not being allowed to use the affirmative defense due to the lack of disclosure. The petition was supported by a letter from Brown to the Saline County jail. Turpin also filed a Rule 651(c) certificate of compliance.

¶ 22    On December 2, 2022, the State moved to dismiss the amended postconviction petition for failure to comply with the affidavit requirements of section 122-1(b) or 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-1(b), 122-2 (West 2022)). The motion further argued the merits, stating that trial counsel's decisions regarding affirmative defenses and witnesses to call was trial strategy, noting that Yarber was recently convicted of 260 counts of predatory criminal sexual assault which might have weighed against his credibility and there was no waiver

9

of any affirmative defense because the State never requested the disclosure. The motion further noted there was no affidavit regarding Yarber's proposed testimony. As to defendant's inability to testify, the State argued that the record revealed that defendant was aware of his right to testify, or not testify, at trial.

¶ 23 Arguments on defendant's amended postconviction petition were held on December 12, 2022. At that time, postconviction counsel argued that the petition was verified, which accounted for the requirements of sections 122-1(b) and 122-2, but conceded he did not have "a lot of experience with this" to the court. He then argued the merits of the petition. The State then argued that both a verification affidavit and a supporting affidavit were required when a defendant was arguing facts outside the record, as seen here. Postconviction counsel stated that he did not think he could compel Yarber to execute an affidavit, especially when he was in prison, but stated that if the court believed it appropriate, he was asking "for leave to bring myself in compliance with what the Court wishes or the law says that I have to in my ignorance from lack of experience with this." The trial court said "Okay" and the State said it would object to that "because we think that the defendant's comments in and of themselves don't meet the *Stricklin* [*sic*] standard regardless of the affidavits." The court took the matter under advisement.

¶ 24 On December 28, 2022, the court issued a docket entry ruling finding that verification was not the same as an affidavit and the affidavits were required to be notarized, citing *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 16. It then found that "the State's Motion to dismiss *** is well taken and is granted." The court clarified that it was not ruling on the merits and granted defendant leave to amend his petition by attaching to it a notarized affidavit within 60 days from the date of the docket entry.

¶ 25    On January 24, 2023, this court issued an order granting the *Anders* motion in defendant's direct appeal. *People v. Burns*, 2023 IL App (5th) 180241-U. The order found the State provided sufficient evidence of guilt, defense counsel was not ineffective, and the court did not abuse its discretion in its evidentiary admissions or in sentencing defendant. *Id.* ¶ 3. After addressing the arguments, the court found the issues were properly classified as unmeritorious by defendant's appellate counsel. *Id.* ¶¶ 13-31. The court also addressed two issues raised in defendant's response to the *Anders* motion. One of which was defendant's claim of ineffective counsel in which defendant contended that "counsel met with him only twice and failed to call any of the witnesses defendant suggested." *Id.* ¶ 34. The order noted that there was no indication that additional visits were necessary (*id.*) and that "defendant fails to name any of the proposed witnesses or to describe what their testimony might have been" (*id.* ¶ 35). It further noted, citing *People v. Watson*, 2022 IL App (5th) 190427, ¶ 50, and *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 48, that decisions about whether to call certain witnesses were strategic and left to counsel's discretion. *Id.* Without specifics, the court could not say counsel was ineffective. *Id.*

¶ 26    On February 14, 2023, a petition for rehearing with the appellate court was filed. Therein, in addition to arguing about threats from Stricklin, defendant also stated that trial counsel did not interview Yarber who was his cellmate and knew about this entrapment and threats to defendant; nor did Drew call Yarber or Brown as witnesses at the trial. Defendant argued, "Also, my attorney Bryan Drew told me not to take the witness stand, he said it would only hurt me." On February 15, 2023, the petition for rehearing was denied by this court.

¶ 27    On February 21, 2023, counsel filed an amended petition for postconviction relief and an amended 651(c) certificate of compliance. The pleading was supported by four exhibits, the first two addressing the court's questioning defendant if he understood his rights about testifying at

11

trial. The third exhibit was correspondence from Brown to the Saline County jail requesting that Yarber be removed from defendant's cell. The fourth exhibit was defendant's affidavit related to the postconviction petition that addressed, *inter alia*, his ineffective assistance claims against trial counsel related to his failure to plead the affirmative defense of compulsion, call witnesses Brown and Yarber in support of the affirmative defense, and included a statement that defendant "unequivocally demanded" that Drew allow him "to testify in my own defense prior to the conclusion of the trial."

¶ 28 On March 8, 2023, the court issued a docket entry providing the State with 30 days to file an amended motion to dismiss or stand on its previous motion for dismissal. On May 17, 2023, the State filed a notice to stand on its previous motion to dismiss.

¶ 29 On June 14, 2023, the trial court issued a three-page order on the State's motion to dismiss that solely addressed the merits of defendant's postconviction petition. The court granted the motion to dismiss as to trial counsel's failure to file the affirmative defense of compulsion or call witnesses at trial to support that affirmative defense. However, the trial court denied the motion to dismiss as to defendant's claim regarding him testifying because counsel denied defendant the right to testify at trial.

¶ 30 On June 28, 2023, the State moved for reconsideration based on *People v. Smith*, 176 Ill. 2d 217, 234 (1997), which stated the court was not required to ask defendant if he wanted to testify. On August 22, 2023, postconviction counsel filed a reply claiming the State reframed the issue; claiming the issue was not whether the trial court asked if he wanted to testify, the issue was trial counsel's denial of defendant's right to testify, stating that *People v. Whiting*, 365 Ill. App. 3d 402 (2006), was more analogous to the case than *Smith*.

12

¶ 31 On November 1, 2023, the trial court issued an order granting the State's motion to reconsider because defendant's affidavit at paragraph 23 said

> "he 'unequivocally demanded that Bryan Drew allow me to testify in my own defense prior to the conclusion of the trial.' Defendant stated he was 'unaware that Attorney Bryan Drew was not going to present my affirmative Defense of Compulsion until my trial had already concluded and Bryan Drew rested my defense on my behalf without me being asked by the court if I wanted to put on a defense or call witnesses or testify.['] "

The order also noted that defendant's affidavit "acknowledges being admonished" and no contemporaneous assertion by defendant of his right to testify at trial when defense counsel rested was made. Defendant appeals.

¶ 32                              ANALYSIS

¶ 33 On appeal, defendant contends that his postconviction counsel was unreasonable in failing to attach affidavits to support defendant's claim that the testimony of two uncalled witnesses would have bolstered his defense. It further contends postconviction counsel's Rule 651(c) certificate is facially invalid, and even if it was valid, any presumption related to the Rule 651(c) is rebutted by the lack of affidavits. Defendant further contends that the trial court erred in dismissing his claims that he was denied effective assistance of counsel for failing to assert a compulsion defense, failing to call potentially material witnesses, and preventing defendant from exercising his right to testify.

¶ 34 The State contends that postconviction counsel's Rule 651(c) certificate was facially valid. However, it concedes that defendant rebutted the presumption that postconviction counsel complied with the rule requirements where postconviction counsel misunderstood the law and did not make the necessary amendments because he failed to attach affidavits from the proposed

13

witnesses as to their likely testimony or an affidavit as to why the witnesses' affidavits could not be obtained. It also argues that the trial court's ultimate decision on the merits was not erroneous.

¶ 35 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) allows convicted criminal defendants the opportunity to challenge the convictions when their constitutional rights were substantially violated at trial or sentencing. *People v. Domagala*, 2013 IL 113688, ¶ 32. The Act provides three stages of review. *People v. Custer*, 2019 IL 123339, ¶ 29. If a petition states the gist of a constitutional claim and it is neither frivolous nor patently without merit, it will advance to the second stage (see *People v. Edwards*, 197 Ill. 2d 239, 244-45 (2001); 725 ILCS 5/122-2.1(b) (West 2022)) and counsel may be appointed to assist the defendant with the claim (725 ILCS 5/122-4 (West 2022)).

¶ 36 Postconviction counsel must provide a " 'reasonable' level of assistance." *People v. Flores*, 153 Ill. 2d 264, 276 (1992). Rule 651(c) ensures this level of assistance by requiring counsel to certify "that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction counsel must comply with Rule 651(c), which may be shown by filing a certificate. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007). If a facially valid Rule 651(c) certificate is presented, a rebuttable presumption of compliance arises. *Custer*, 2019 IL 123339, ¶ 32. However, any failure to file a sufficient Rule 651(c) certificate "is harmless error if the record demonstrates that counsel adequately fulfilled the required duties." *People v. Lander*, 215 Ill. 2d 577, 584 (2005)

¶ 37 Here, postconviction counsel's certificate made no statement that he made the necessary amendments to the *pro se* petition as required by the Rule. See Ill. S. Ct. R. 651(c). Therefore, there is no presumption of compliance. Moreover, the record fails to show that counsel fulfilled the Rule 651(c) duties.

¶ 38 The Act requires the allegations in the petition to be supported by "affidavits, records, or other evidence" or it must "state why the same are not attached." 725 ILCS 5/122-2 (West 2022). While affidavits are often required to properly support allegations involving failure to call or contact witnesses, the record or other evidence may be sufficient to support the allegations. See *People v. Dupree*, 2018 IL 122307, ¶¶ 34, 41-42.

¶ 39 Defendant's allegations stated that testimony from Yarber and Brown would have substantiated his compulsion affirmative defense. While a letter from Brown to the Saline County jail asked that a cellmate be removed from defendant's cell, the letter named Yarber as the cellmate to be moved, not Stricklin, as claimed by defendant. No affidavit from either Yarber or Brown— or an affidavit stating why one was not available—was presented that set forth the proposed testimony of Yarber or Brown, necessary to corroborate defendant's allegations. On this record, we cannot find that postconviction counsel completed all the necessary amendments to defendant's *pro se* postconviction petition as required by Rule 615 and therefore failed to provide reasonable assistance. Therefore, the case must be remanded "regardless of whether the petition's claims have merit" (*People v. Addison*, 2023 IL 127119, ¶ 42), to allow for the necessary amendments to defendant's *pro se* postconviction petition.

¶ 40                    CONCLUSION

¶ 41    For the above-stated reasons, we reverse the trial court's order dismissing defendant's amended postconviction petition and remand the cause for compliance with Rule 651(c), without addressing the merits.

¶ 42    Reversed and remanded.