SECOND DIVISION

No. 1-09-0131

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| CYNTHIA FARIA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable Bertina E. |
| | ) | Lampkin, |
| | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Following a bench trial, defendant Cynthia Faria was found guilty of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2008)) and was sentenced to a term of six years' imprisonment, to be followed by a two-year period of mandatory supervised release. On appeal, defendant contends she was denied the right to a fair trial because the trial court: (1) limited defense counsel's ability to cross-examine the State's witnesses and advocated for the State by taking over the cross-examination of the State's witnesses; (2) demonstrated bias against defense counsel that evidenced a

prejudgment of defendant's guilt; and (3) denied her right to making a closing argument by interrupting and challenging defense counsel's remarks. For the following reasons, we affirm the judgment of the trial court.

The record indicates that on January 14, 2008, at about 5:30 a.m., the victim's car, a black 1989 BMW, was stolen. The victim, Rocio Escamilla Cruz, spoke only limited English and testified through an interpreter. Cruz stated that she had just parked her car outside a bakery located in Chicago and had left the car running while she went inside. She also left her purse in the car. As Cruz entered the bakery, she saw a man and a woman standing on the sidewalk. When she exited the bakery, her car was missing and the man and woman were gone. Later that day, she and a friend drove around looking for her car and saw it parked with two individuals inside. Cruz called 9-1-1 and flagged down a sheriff's car that happened to be passing by. Deputy Sheriff Ernesto Leon testified that he approached Cruz's car and detained defendant as defendant exited the car. Chicago police officers also responded to the scene and arrested defendant. Cruz's identification card and car keys were found in defendant's coat pocket. Cruz identified defendant as the woman she had seen in front of the bakery that morning. Chicago police officer Susana Lacasa testified that after defendant was arrested and given Miranda warnings, she asked defendant if defendant knew the car was stolen. Defendant told her, "Yes, I knew but was - - was not me the one who took the car from the bakery. It was my friend Eric. I was with him but I knew the car was stolen." When the officer asked defendant if she knew that the car's radio

was missing, defendant replied, "Yeah. Eric took it. Eric took the radio to sell it, to sell it in [sic] the west side of Chicago." After the close of evidence, the trial court found defendant guilty. Defendant now appeals.

On appeal, defendant raises several issues regarding the propriety of the trial court's comments and interjections during pretrial and trial proceedings. She maintains that because of the court's actions she was denied the right to a fair trial. Initially, we note that defense counsel neither objected to the court's actions, neither at trial nor in a posttrial motion. Therefore, defendant's contentions are forfeited. See People v. Herron, 215 Ill. 2d 167, 175 (2005) (a defendant forfeits review of errors unless she makes an objection during trial and raises the issue in a posttrial motion).

Defendant asks this court to review her claim for two different reasons. First, she argues that we should relax the forfeiture rule because the error concerns the trial court's conduct. Second, she argues we should consider the error under the second prong of the plain error exception because the error was so serious she was denied a fair trial.

Our supreme court has recently discussed forfeiture and the plain error doctrine in People v. McLaurin, 235 Ill. 2d 478 (2009). In McLaurin, the court first noted that the application of the forfeiture rule is less rigid where the basis for the objection is the trial judge's conduct, citing to People v. Kliner, 185 Ill. 2d 81, 161 (1998), and People v. Sprinkle, 27 Ill. 2d 398 (1963). However, courts generally only relax application of the forfeiture rule in the "most compelling of situations," such as when a trial judge makes

3

inappropriate remarks to the jury or in cases involving capital punishment. McLaurin, 235 Ill. 2d at 488. In McLaurin, the court determined that the defendant had not presented an extraordinary or compelling reason to relax the forfeiture rule because the defendant did not claim "that the trial court overstepped its authority in the presence of the jury" or that counsel's objection to the trial court's conduct "'would have fallen on deaf ears.'" McLaurin, 235 Ill. 2d at 488.

Here, as in McLaurin, defendant has not established that an extraordinary or compelling reason exists to relax application of the forfeiture rule. First, defendant's trial was a bench trial and not a jury trial. Therefore, there was no jury to hear or be influenced by the court's remarks. Had this been a jury trial, we may well have reached a different decision. Second, the record does not show that defendant's objections would have fallen on deaf ears. The trial court neither acted in defense counsel's absence nor prevented defense counsel from making an objection. We decline to relax the forfeiture rule in this case.

We next examine defendant's contentions pursuant to the plain error doctrine. Plain error applies to a forfeited error affecting the substantial rights of a defendant when: (1) the evidence in a case is so closely balanced that the guilty verdict may have resulted from the error and not the evidence; or (2) the error is so serious that the defendant was denied a substantial right, and thus a fair trial. Herron, 215 Ill. 2d at 178-79. To establish the first prong of plain error, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error

4

alone severely threatened to tip the scales of justice against him. Herron, 215 Ill. 2d at 187. To establish the second prong of plain error, defendant must establish that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. Herron, 215 Ill. 2d at 187. Defendant has the burden of persuasion of establishing plain error. People v. Naylor, 229 Ill. 2d 584, 593 (2008).

We first note that defendant would not be able to establish plain error under the first prong of the plain error analysis because the evidence was not closely balanced. The evidence presented at trial established that defendant was found sitting in the victim's car and made an inculpatory statement that she knew the car had been stolen. Needless to say, this was not a close case.

With respect to the second prong of plain error, we must first consider whether defendant established that a clear or obvious error occurred. Defendant first contends the trial court limited defense counsel's ability to cross-examine the State's witnesses and advocated for the State by taking over counsel's cross-examination. Specifically, defendant argues the court limited counsel's ability to cross-examine all three of the State's witnesses; Cruz, Deputy Sheriff Leon and Officer Lacasa.

A defendant's right to cross-examine a witness concerning possible biases, prejudices, or ulterior motives is protected by both the federal and state constitutions. People v. Ramey, 152 Ill. 2d 41, 67 (1992). The right to confront adverse witnesses cannot be denied by the trial court, but the court is granted latitude in certain instances.

5

People v. Nutall, 312 Ill. App. 3d 620, 627 (2000). For example, the court may interject to avoid repetitive or unduly harassing interrogation. Nutall, 312 Ill. App. 3d at 627. Furthermore, a trial court is justified in questioning witnesses when the court's purpose is to clarify issues. People v. Heiman, 286 Ill. App. 3d 102, 115 (1996). This flows in conjunction with the trial court's responsibility to achieve prompt and convenient dispatch of court proceedings. People v. Thigpen, 306 Ill. App. 3d 29, 40 (1999). Also, the trial court's latitude to question witnesses on material issues is enhanced in the context of a bench trial because the danger of prejudice to the defendant is lessened. People v. Palmer, 27 Ill. 2d 311, 314-15 (1963). However, the court must always remain impartial and cannot assume the role of an advocate. People v. Cofield, 9 Ill. App. 3d 1048, 1051 (1973).

Defendant points to numerous specific instances of the court interrupting his cross-examination of Cruz. We highlight a few of the instances below.

"MR. DOUGLASS [defense counsel]: When you rode by at that time, you couldn't see any faces in the car, correct?

MS. CRUZ: The one to this side I could see.

Q. What side?

THE COURT: What side of what?

A. The left side.

MR. DOUGLASS: What side of what?

THE COURT: Just, Ma'am, because I can't stand the way you do

6

this Mr. Douglass, it's going to make me scream. Ma'am, you said you could see somebody in the car. What seat were they sitting in? The face you could see, what seat was the person sitting in?"

When defense counsel was attempting to impeach Cruz, the following colloquy occurred.

"MR. DOUGLASS: When you remember testifying - -

THE COURT: It's not when you remember testifying. Ask her the question and the answer that you're challenging.

MR. DOUGLASS: Okay. Let me ask this question first, Judge.

Q. Do you remember when you spoke in court that in court did you raise your hand to take an oath and swear to tell the truth?

A. Yes.

Q. Just like you did today, right?

THE COURT: She doesn't have to go over that. She said she rose her hand.

MR. DOUGLASS: I'll move on.

THE COURT: Mr. Douglass, you just waste time and it's unbelievable.

* * *

MR. DOUGLASS: Judge, I don't think that answer is responsive to my question. I'd ask that the court ask her to answer my question.

7

THE COURT: I don't think she understands because it's a language problem and you're not trying to make it easier. Ma'am - -

MR. DOUGLASS: Judge, you want to see the transcript?

THE COURT: I don't need to see it. I need to ask the question - -

MR. DOUGLASS: Okay.

THE COURT: - - of somebody who speaks a different language as you know she does. Ma'am, he's not asking you what you saw at the time. He's asking you when you testified, when somebody posed a question to you, did you answer it the way that he is saying you answered it. And the question is were you asked 'and you didn't see anyone's faces then, did you' and your answer was 'no.' Is that what you said?

A. Yes.

THE COURT: Okay. You can go on."

Defendant also cites to several pages of the record in which the trial court made various interjections when defense counsel was cross-examining Deputy Sheriff Leon and Officer Lacasa. For example, during Deputy Sheriff Leon's cross-examination, when defense counsel misstated Deputy Sheriff Leon's testimony, the court interrupted counsel stating, "[w]ell, don't say something he hasn't said. I'm listening. I can't stand it."

Additionally, during Officer Lacasa's cross-examination, the court interrupted defense counsel numerous times when his questions were repetitive. For example, the

8

court stated, "[n]o. We will not ask that again. You've asked it now three times." The court later commented to counsel, "[y]ou're taking this inch by inch, step by step, second by second." Also, at the conclusion of Officer Lacasa's testimony, the court noted that the officer spoke with an "exceedingly strong accent," did not quite speak in full sentences and it was clear that English was not her first language.

Here, the record reflects that the trial court's numerous interjections of defense counsel's cross-examination of the State's witnesses was for the purpose of clarification and moving the proceedings along. It was especially important to avoid confusion when Cruz and Officer Lacasa testified since Cruz was testifying through an interpreter and Officer Lacasa was not fully proficient in English. Also, it was important for the court to correct defense counsel's misstatement of Deputy Sheriff Leon's testimony. We do not find that the court limited defense counsel's ability to cross-examine the State's witnesses or that the court's actions rose to the level of becoming an advocate for the State.

Next, defendant contends the trial court's bias toward defense counsel caused the court to pre-judge defendant's guilt. Defendant points to the court's following pretrial remarks to counsel.

"THE COURT: Mr. Douglass, I am going to have your supervisor down here, because I'm making a record. I think every case that you have had set for the last two months for trial, you have not had the witness here. They have not been served. I mean, it could not

continually be somebody else's error. Just five minutes ago, I had a case here with seven witnesses.

MR. DOUGLASS: Judge, I'm not denying that.

THE COURT: Now on this one, you say seven days before trial, well, first you shouldn't be issuing a subpoena seven days before trial. This case was set May 15th for trial. You had 50 days or so to subpoena the witness. You don't wait seven days before trial to subpoena a witness and not follow through on it. I am not tolerating this any longer. You all can step away. I need a supervisor.

* * *

And it's not the investigator's fault, it's Mr. Douglass, for giving the investigator a request seven days before jury trial is set when he had a month and a half to do so."

As a result, the court had to postpone the trial until the next day in an attempt to allow defense counsel to bring in the witness to testify in defendant's defense. Ultimately, however, the witness was unavailable and did not testify.

Defendant also points to the court's numerous remarks to defense counsel throughout trial as evidence of the court's bias.

"MR. DOUGLASS: That person you've just described and the woman you just described - -

THE COURT: She didn't describe a woman. She just described a

man.

MR. DOUGLASS: I'm sorry. You're right, Judge.

THE COURT: I know. And don't even start. Don't do that.

MR. DOUGLASS: Okay.

THE COURT: Okay. There's a language problem clearly so don't try to confuse by putting different things together. Don't do that."

Defendant also notes the court's following remarks at trial, "[y]ou may not make a novel out of a question"; "[y]ou're taking forever to ask a simple question"; "[y]ou're just redundant"; and "don't go over these useless questions."

Defendant next points to the court's interruptions of defense counsel's closing argument as further evidence of the court's prejudgment of defendant's guilt. Defense counsel was pointing out discrepancies in the State's witnesses' testimony, commenting that it did not make sense, when the court responded, "it does to me."

Defendant also refers to the following colloquy.

"MR. DOUGLASS: And I'll finish. We believe that there is reasonable doubt, that the State has not met their burden on each and every element of this case. We ask that you find [defendant] not guilty of this crime.

THE COURT: Okay. I would normally let you argue, [defense counsel], but I can't stand it so I have to actually go on. The State does not have to prove the plate number. The State does not have to prove the

11

VIN number. The State has to prove that the defendant possessed a car knowing that it was stolen. They have proved that she possessed a car knowing that it was stolen."

A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. <u>Eychaner v. Gross</u>, 202 Ill. 2d 228, 280 (2002). Allegations of judicial bias or prejudice must be viewed in context and should be evaluated in terms of the trial judge's specific reaction to the events taking place. <u>People v. Jackson</u>, 205 Ill. 2d 247, 277 (2001). A judge's display of displeasure or irritation with an attorney's behavior is not necessarily evidence of judicial bias against the defendant or his counsel. <u>Jackson</u>, 205 Ill. 2d at 277.

Here, when the trial court's comments are viewed within the context they were made, they do not evidence a bias or prejudice against defense counsel. If anything, they show the trial court's impatience with defense counsel's lack of preparedness for trial regarding the subpoena, the court's attempt to correct defense counsel's misstatement of the evidence and the court's attempt to move the proceedings along when counsel asked redundant or unclear questions. This showing of impatience, with nothing more, does not lead this court to conclude that the trial court was biased against defense counsel or defendant. Perhaps the court could have shown a touch more patience when dealing with defense counsel; however, a defendant is entitled to a fair trial and not a perfect trial. Defendant's trial may not have been perfect, but it was fair. Therefore, we find that defendant has not overcome her burden of

12

challenging the court's presumption of impartiality.

Lastly, defendant contends she was denied the right to a fair trial when the trial court limited defense counsel's closing argument by interrupting and challenging counsel's remarks.

Specifically, the trial court challenged defense counsel's argument that it did not make sense that Deputy Sheriff Leon would turn over defendant's arrest to the Chicago police department rather than make the arrest himself. The court commented that it made sense to her because in her experience it was rare that a sheriff made an arrest when the Chicago police department was also involved. Defense counsel further argued that the State had not proven defendant guilty because the State failed to prove that the vehicle identification number (VIN) from the recovered car matched the victim's car. The court commented both before and after counsel concluded his argument that the State did not have to prove the VIN and the victim's testimony that the recovered car was her car was sufficient. Defense counsel concluded his closing argument by stating that the State had not proven defendant guilty beyond a reasonable doubt.

A defendant has a constitutional right to present a closing argument. Herring v. New York, 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975). However, the trial court has broad discretion in regards to limiting the argument. Herring, 422 U.S. at 862-65, 45 L. Ed. 2d at 600-02, 95 S. Ct. at 2555-57. Although the closing argument is not evidence, the trial court has a duty to be attentive, patient, and impartial. People v. Smith, 205 Ill. App. 3d 153, 157 (1990).

13

Here, defense counsel presented a full closing argument to the court. Although his remarks were challenged by the court, he was permitted to argue his theory of the case to the court. He was neither given a time limit nor pressured by the court to finish prematurely. Counsel finished his argument by stating that the State had not proven each element of the charged offense beyond a reasonable doubt and asked the court to find defendant not guilty.

We are not persuaded by defendant's reliance on People v. Heiman, 286 Ill. App. 3d 102 (1996), and People v. Stevens, 338 Ill. App. 3d 806 (2003). In Heiman, the cause was reversed and remanded for a new trial because the court made "excessive and exaggerated derogatory" comments about the defendant during closing argument as well as negative comments about a defense witness prior to and after the witness's cross-examination. Heiman, 286 Ill. App. 3d at 112. This court found on appeal that the trial court's 40 to 50 interruptions and arguments with defense counsel during closing argument indicated that the trial court had already decided the case and was not interested in any argument from the defense. Heiman, 286 Ill. App. 3d at 112. In Stevens, the trial court repeatedly interrupted defense counsel, exhibited impatience by telling counsel he had two minutes left to argue and then immediately telling counsel he had overrun his time, and showed a prejudgment of the case by remarking before counsel concluded that the court was convinced the State had proven the defendant guilty. Stevens, 338 Ill. App. 3d at 810. Unlike in Heiman and Stevens, the trial court here did not make derogatory comments about defendant, did not cut short defense

14

counsel's argument with a time limitation and did not show a prejudgment of the case before counsel concluded his argument.

For the foregoing reasons, we find that no clear or obvious error occurred. Therefore, defendant has failed to meet his burden of establishing plain error. Defendant's claims are forfeited.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

HOFFMAN and THEIS, JJ., concur.

1-09-0131

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

CYNTHIA FARIA,

Defendant-Appellant.

No. 1-09-0131

Appellate Court of Illinois
First District, Second Division

June 22, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

HOFFMAN and THEIS, JJ., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Bertina E. Lampkin, Judge Presiding.

For APPELLANT, DePaul University Legal Clinic, Chicago, IL (Professor Andrea D. Lyon, Associate Dean for Clinical Programs, and Frank Cesarone, law student)

For APPELLEE, Anita Alvarez, State's Attorney of Cook County (Alan J. Spellberg, Tasha-Marie Kelly, Jacqueline James, Assistant State's Attorneys, of counsel).