2024 IL App (2d) 230604-U
No. 2-23-0604
Order filed March 21, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Nos. 23-CF-1138 23-DV-462 |
| JASON S. COLLERAN, | ) ) | Honorable Jeffrey L. Hirsch, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The order of the trial court denying the State's petition for detention is not against the manifest weight of the evidence, but the trial court erred in prohibiting the State from arguing for conditions of release not contained in its written detention motion.

¶ 2                    I. INTRODUCTION

¶ 3   The State appeals an order of the circuit court of McHenry County denying its motion to detain defendant, Jason S. Colleran, in accordance with section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the reasons that follow, we affirm and remand, with directions.

¶ 4                                                       II. BACKGROUND

¶ 5      On December 8, 2023, defendant was arrested and charged with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2022)), which were both class 4 felonies based on defendant's prior convictions (see 720 ILCS 5/12-3.2(b) (West 2022)). The State also filed two misdemeanor counts based on the same conduct, but absent the allegation of a previous conviction. The victim is defendant's 19-year-old daughter. The State filed a petition to detain defendant on that day as well.

¶ 6      A hearing was held on the State's petition. In support, the State proffered, orally, the following:

> "With regard to the probable cause statement, the State would read as follows. That without legal justification, the Defendant grabbed and pushed the victim to the floor on a public roadway causing injury. As a victim's statement, the State would proffer the Defendant has been diagnosed with bipolar [disorder]. The victim believes he takes medication. The victim states that the Defendant is a very violent person in general."

The State continued, "With regard to the DVRA" (Domestic Violence Risk Assessment), the victim stated that defendant "consumes alcohol in large amounts as well as cannabis," "is an alcoholic," and "has bipolar disorder that he has not been taking his medication for." It also indicated that, at the crime scene, defendant was angry, indifferent, uncooperative, and aggressive. It then outlined defendant's criminal history, which includes a ten-year sentence to the Illinois Department of Corrections (IDOC) for residential burglary in 2017, concurrent with 15 months in the IDOC for aggravated DUI. The State also apprised the court that, in 2016, defendant was sentenced to 15 months in the IDOC for aggravated DUI and driving while his license was suspended or revoked. Defendant was sentenced to 180 days in jail and 24 months of probation for possession of a

controlled substance in 2015; as well as other earlier offenses. The Probation and Court Services Report indicates defendant had a prior conviction for domestic battery. The State argued that defendant's "prior criminal history which is indicative of violent, abusive, and assaultive behavior," along with the identity of the victim (who lived with defendant), "the nature of the threat," and defendant's substance abuse and untreated mental health issues rendered him a threat to the safety of the victim and others.

¶ 7    The trial court then inquired, "What other evidence do you have that he is not treating for mental health issues?" The State indicated that this proposition was based on "the statements of his daughter." The State did not know how old defendant's daughter was.

¶ 8    Defense counsel asked that defendant be released "with standard conditions, as well as a short stay away in lieu of a permanent no contact order." He stated defendant's previous domestic violence conviction happened over seven years ago. Further, all other violent offenses occurred when defendant was a juvenile. It noted the charged offense was based upon "a push" and that it did not involve weapons. The victim suffered a scraped knee that did not require medical attention.

¶ 9    The trial court then asked the State whether the DVRA used by pretrial services was "geared towards intimate partner violence as opposed to a parent against what you suspect is an adult child." The State replied, "I do not believe it is for intimate partners." The trial court then pointed out that it uses the term "partner" repeatedly. We note that the DVRA has a section entitled "Victim Interview" and asks the root question, "Has your partner (the offender) ever ***" and there follows nine check-box-questions about the nature of any previous abuse. The document indicates that defendant threw the victim to the ground on a roadway, where she scraped her knee. Defendant had previously threatened to kill the victim. He did not have access to a weapon. The

victim responded affirmatively to the question asking whether "the violence has been getting more severe/frequent." It also stated that the victim did not feel that she was in danger.

¶ 10    The State reiterated that the victim reported that defendant had substance abuse and untreated mental health issues. The trial court then stated:

> "There is no indication how she knows that. That's why I asked you what other evidence you might have. There is evidence that he is drinking on this occasion, and he appears to be intoxicated. And there is [*sic*] old convictions for DUIs. But I don't get the point of what you are arguing about his mental health disorder if the only evidence you have of that is a child's statement, who apparently moved in with him in August, according to this. That's why I was wondering if there is any independent basis why you think this is a relevant factor that the victim says he has a condition, and the victim says he is not taking medication. But I don't know how she knows that."

The State then replied that it believed this information was relevant and the trial court could afford it whatever weight it deemed appropriated, to which the trial court replied, "Like zero." It continued:

> "You know you say that all the time, but you come to these, you file petitions, and you have no other evidence other than what the police say. It is really surprising because there are serious cases here, and all you do is read to me documents that are in a file."

¶ 11    The State then requested that, if the trial court determined that defendant was not detainable, the court impose various conditions, including: that defendant surrender and refrain from possessing any weapons; that he complete a substance abuse evaluation; that he complete "[r]andom drops and toxicology"; that he be monitored by GPS; and that he have no contact with the victim. The trial court noted that the State did not file a petition seeking such conditions:

"You could file as many petitions as you want. You guys are really good at it. But for some reason you chose to deny, and you didn't ask for any additions, nor is that part of your evidence. Now, you are just making up arguments about why I should put him on GPS because I happened to ask you why you didn't meet your burden of proof."

The trial court then denied the State's petition:

"All right. The State has the burden of proof here to show by clear and convincing evidence that they have met all the requirements for pretrial release. They have shown that this is a detainable offense. They have not met any other requirements to show that he poses a real and present threat to the safety of any person in the community or that he is a willful flight [*sic*], and clearly there are other available conditions, that if we gave it any amount of critical thought, we would come up with something. So the Court on its own is going to impose pretrial release conditions that are required for domestic battery.

* * *

"The State did not file a petition for other conditions. I don't think other conditions relating to alcohol use are necessary because that's not an element of the offense. I'm going to order a 72 hour stay away from the alleged victim, ***. You must also comply with any orders of protection that are entered. The State is not asking for any here, but perhaps [the victim] will be smart enough to get one on her own."

The State now appeals.

¶ 12                                         III. ANALYSIS

¶ 13    The State raises three arguments on appeal. First, it argues that the trial court erred in determining that the State failed to prove that the proof was evident or presumption great that defendant committed the charged offenses, that defendant's release posed a threat to any persons

5

or the community, and that no conditions could mitigate that threat. For each item, the State argues that the trial court erred by finding that its proffered evidence of what the police reported was insufficient for it to carry its burden. Second, the State asserts that the trial court erred by denying it an opportunity to seek the imposition of certain pretrial conditions because the State only sought detention in the petition it filed. The State contends that it should have been allowed to address conditions of release in the alternative." Finally, the State asserts that "[t]he trial court demonstrated a bias against the State and the victim" and asks that we remand the cause for a new hearing before a different judge.

¶ 14     Generally, a trial court's decision regarding whether to detain a defendant is reviewed using a two-part standard. The manifest-weight standard applies to the trial court's factual determinations, including whether the proof is evident or the presumption great that the defendant committed the offenses at issue; whether a risk of flight exists; and whether any conditions of release could sufficiently mitigate that risk. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if an opposite conclusion to that of the trial court is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only when no reasonable person could agree with the trial court's decision. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52. Questions of law, such as the construction of statutes, are reviewed using the *de novo* standard of review. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 16. It is well-established that we review the result at which the trial court arrived rather than its reasoning. *People v. Johnson*, 208 Ill. 2d 118, 128 (2003). Moreover, as the appellant, the burden is on the State to establish the existence of error

in the record. *In re Alexander R.*, 377 Ill. App. 3d 553, 557 (2007); *McGann v. Illinois Hospital Ass'n, Inc.*, 172 Ill. App. 3d 560, 565 (1988).

¶ 15                    A. Sufficiency Of The Evidence

¶ 16    When the State files a petition to detain a defendant in accordance with section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), it bears the burden of establishing, by clear and convincing evidence: (1) that the proof is evident or the presumption great that the defendant committed the offense (725 ILCS 5/110-6.1(e)(1) (West 2022)); (2) that the defendant's release would pose a real and present threat to any persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of flight (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)); and (3) that no combination of conditions could mitigate those risks (725 ILCS 5/110-6.1(e)(3) (West 2022)). Our supreme court has explained, "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The trial court determined that the State failed to carry its burden regarding any of these three elements.

¶ 17    As the State's arguments regarding each element are essentially the same, we will address them together. The State argues that the trial court "improperly disregarded proffered evidence presented pursuant to" section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2022)). It adds, "The court stated that the State came to the hearing with no other evidence than what the police said" and "The Court said that this is really surprising, implying that the State must present more than proffered information from law enforcement to meet its burden." In fact, the trial court stated, "It is really surprising because there are serious cases here, and all you do is read to me documents that are in a file." The State's point is well founded. Section 110-6.1(f)(2) expressly contemplates the State proceeding in this manner: "The State or defendant may present evidence

7

at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Indeed, such proffers have been held sufficient for the State to carry its burdens. See, e.g., *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 18    We note, however, that the police synopsis itself—if there was one—is not included in the record. Rather, the State simply read into the record "[t]hat without legal justification, the Defendant grabbed and pushed the victim to the floor on a public roadway causing injury." The basis for this assertion does not appear in the record. Thus, it provides no information regarding the *evidence* the State intends to present against defendant. The DVRA indicates that audio/visual recordings were taken of statements made by the victim, the defendant, and by two eyewitnesses to the alleged offense, but again none of these were before the trial court. Similarly, the State read parts of a statement by the victim indicating that she believed defendant had been diagnosed with bipolar disorder and that he takes medication. She also characterized him as "a very violent person in general." Again, the basis for these statements is not of record. These omissions provide a reason to attribute diminished weight to these assertions. See *Cohen v. Washington National Insurance Co.*, 2 Ill. App. 3d 149, 151 (1971) (quoting *Houswerth v. Seidel*, 47 Ill. App. 2d 112, 117 (1964)) ("[W]e cannot give weight to the unsupported assertion of counsel, dehors the record.").

¶ 19    The trial court also placed little weight on information derived from a document entitled, "McHenry County Domestic Violence Risk Assessment" (DVRA), which was completed by a law enforcement officer. The DVRA memorializes information provided by the victim, including that defendant had threatened to kill her, that "violence has been getting more severe/frequent," that defendant uses "alcohol in large amounts and cannabis," and that defendant "is an alcoholic and has bi-polar disorder that he is not taking his medicines for." It also indicates that defendant has no access to weapons and that the victim refused medical treatment and did not feel she was in

danger. The trial court discounted this information because it was recorded on a document that is typically used for violence between intimate partners rather than parents and children (the court noted that the document repeatedly refers to the victim's partner, such as asking "Do you believe your partner could kill you?"). While this may have been a valid criticism had the DVRA been an actuarial instrument used to predict further violence (*cf. People v. Lind*, 307 Ill. App. 3d 727, 739 (1999) ("Any weakness in the basis of an expert's opinion goes to the weight of the testimony."), it is unclear to us why the nature of the document in which the victim's statements were recorded by law enforcement would affect their weight. Nevertheless, the majority of the propositions contained in the DVRA were conclusory and, as above, do not permit us to determine that the trial court's decisions were against the manifest weight of the evidence.

¶ 20　　We further note that the State relies on defendant's criminal record, which includes a 2016 domestic violence conviction, a burglary, and convictions for DUI as well as other alcohol and drug related offenses. The trial court placed diminished weight on the domestic violence conviction in 2016, as "it was some time ago" (we note that defendant was sentenced to 10 years imprisonment in 2017). While the existence of a prior domestic violence conviction would militate in favor of a finding of dangerousness, that they were temporally removed from the current charges was a legitimate reason to attribute them diminished weight. See *People v. Delgado*, 2024 IL App (2d) 230483-U, ¶¶ 13-14.

¶ 21　　In sum, given the record provided here by the State, we cannot say that the trial court's findings as to whether the proof was evident or the presumption great and as to whether the defendant was a threat to persons are contrary to the manifest weight of the evidence. Nor can we say that no reasonable person would agree that defendant should be released; therefore, the trial court's decision is not an abuse of discretion.

¶ 22                                    B. Conditions Of Release

¶ 23    The State argues that "[t]he [trial court] failed to allow the State to argue for pretrial conditions, because the State only sought detention in its written petition" and that it "should have been permitted to argue in the alternative when the [trial] court denied the State's petition to detain." It notes that "[t]here is no statutory requirement that requests for conditions be made in writing" and that "[t]here is no prohibition on the State recommending conditions if the [trial] court denies a request for detention." We agree.

¶ 24    Before the trial court, the State attempted to address what conditions would be appropriate if the trial court denied its petition to detain:

> "If this Court's position is that the Defendant would not be detainable today, then the State would be asking for the mandatory conditions. That the Defendant not leave the State. That he surrender and not possess any firearms or other dangerous weapons. That he complete a substance abuse evaluation. Random drops and toxicology. That there be GPS monitoring of at least five miles. And that there be a no contact order to be entered."

The trial court declined to consider the State's requests: "But that's not what you argued. I mean that's not what you filed. You filed a petition to detain him." Instead, the trial court only required defendant to appear in court as ordered; submit himself to the orders and processes of the court; not violate any criminal statute; comply with all terms of pretrial release; apprise the court clerk of changes of address; and have no contact with the victim for 72 hours.

¶ 25    As the State points out, nothing in the statute requires it to file a motion or petition to advocate for particular conditions of release. We note that section 110-6.1(a) of the Code expressly requires the State to proceed by "verified petition" when it seeks to detain a defendant. 725 ILCS 5/110-6.1(a) (West 2022)). Conversely, regarding imposing conditions upon release, section 110-

5(c) simply states: "The court shall impose any conditions that are mandatory under subsection (a) of Section 110-10. The court may impose any conditions that are permissible under subsection (b) of Section 110-10." 725 ILCS 5/110-5(c) (West 2022). Unlike section 110-6.1(a), section 110-5(c) contains no requirement that the State file a petition or motion. Section 110-10, which is referenced in section 110-5(c), similarly contains no such requirement. See 725 ILCS 5/110-10 (West 2022). Further, section 110-10(b)(9) expressly authorizes a trial court to consider "other reasonable conditions" if "it is determined that they are necessary" without mentioning the need for filing a motion. 725 ILCS 5/110-10(b)(9) (West 2022). Absent an ambiguity (which defendant does not suggest is present here), "a court must construe the statute as enacted without adding exceptions, conditions, or limitations to the legislature's clearly expressed intent." *Clay v. Kuhl*, 297 Ill. App. 3d 15, 20 (1988). Since no such condition is contained in the statute, the trial court erred as a matter of law in failing to permit the State to advocate for conditions of release, authorized by law, regardless of the absence of a written motion seeking them.

¶ 26                                    C. Trial Court Bias

¶ 27    Finally, the State has raised the issue of trial court bias.  Whether the trial judge's conduct requires reversal is reviewed *de novo*. *People v. Fisher*, 2023 IL App (4th) 220717, ¶ 31. A trial court may not show bias or prejudice against either party and must conduct itself in a fair and impartial manner. *People v. Moore*, 2023 IL App (1st) 211421, ¶ 115. Judicial restraint in the court's conduct and remarks is required throughout all the court's dealings with the litigants who come before it. *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 80. A trial judge is presumed to be impartial, and it is the burden of the party challenging the court's impartiality to overcome that presumption. *People v. Romero*, 2018 IL App (1st) 143132, ¶ 96. To show bias, a defendant must "demonstrate that the judge displayed 'active personal animosity, hostility, ill will, or distrust

toward the [party].' " *People v. Shelton*, 401 Ill. App. 3d 564, 583 (2010). The fact that a judge displayed irritation or displeasure with a party "is not necessarily evidence of judicial bias…." *People v. Jackson*, 205 Ill. 2d 247, 277. In this case, while the record certainly reveals some judicial displeasure, both the record and the State's argument fall short of establishing what is required to show bias. See *People v. Fisher*, 2023 IL App (4th) 220717, ¶¶ 30-31; *People v. Faria*, 402 Ill. App. 3d 475, 482 (2010) ("Perhaps the court could have shown a touch more patience ***.").

¶ 28                                    IV. CONCLUSION

¶ 29     In light of the foregoing, we remand for a new hearing where the State may seek additional conditions of release, and we otherwise affirm. The conditions of release imposed by the trial court shall remain in effect pending that hearing. We express no opinion as to whether any additional conditions ought to be imposed.

¶ 30     Affirmed in part, vacated in part, and remanded with instructions.