NOTICE
Decision filed 09/17/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250448-U

NOS. 5-25-0448, 5-25-0449 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* JAYLYNN C. and PIERCALYNN C., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Moultrie County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 22-JA-3, 22-JA-4 |
| | ) | |
| Amber C., | ) | Honorable |
| | ) | Jeremy J. Richey, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's findings that respondent was an unfit parent and that it was in the best interests of the minor children to terminate her parental rights were not against the manifest weight of the evidence, where respondent stipulated she was an unfit parent and sufficient evidence was presented during a hearing in accordance with best interest factors.

¶ 2    The Moultrie County circuit court found respondent, Amber C., to be an unfit parent and terminated her parental rights concerning her minor children. Respondent appeals the determination of unfitness issued on February 5, 2025, as well as the best interest finding and subsequent termination entered on May 8, 2025. For the reasons outlined below, we affirm the judgment of the circuit court.

1

I. BACKGROUND

¶ 4     On May 4, 2022, the Moultrie County States Attorney (State) filed petitions pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) against respondent Amber C.[1] The State alleged that Jaylynn C. (J.C.), born October 20, 2019, and Piercalynn C. (P.C.), born January 19, 2021, were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (*id.* § 2-3(1)(b)). More specifically, the State claimed that the environment was injurious to the children's welfare because respondent exposed the children to substance abuse, she suffered from a mental disease that impacted her decision-making ability and coherence, she failed to provide adequate supervision, and the living conditions were filthy and unsafe.

¶ 5     On May 5, 2022, a temporary custody order was entered, whereby the circuit court determined that there was an immediate and urgent necessity to remove the minors from their home and granted temporary custody to the Illinois Department of Children and Family Services (DCFS).

¶ 6     On August 12, 2022, respondent admitted to one count of neglect, which resulted in the issuance of an adjudicatory order. On September 8, 2022, a dispositional report was submitted. This report indicated that respondent had completed an integrated assessment, which recommended services, including substance abuse treatment, random drug screenings, individual therapy for domestic violence, parenting education, and efforts to maintain adequate and secure housing. It further noted that when J.C. and P.C. came into care, both children were behind on their medical appointments and immunizations and exhibited significant speech delays. The foster parents had initiated speech therapy for both children. Respondent was actively participating in

---

[1]The initial petitions involved three children and two fathers. This appeal does not concern either father or the third child. The appeal was filed solely regarding two children. Consequently, all discussion herein will focus on respondent and the two named children.

her services and attending her two-hour weekly supervised visits with the children. The report recommended that the minors be adjudged wards of the court and that DCFS be appointed as their guardian.

¶ 7    The matter was called for a dispositional hearing on September 13, 2022. The dispositional report was reviewed, and the circuit court adopted the findings and recommendations in the report. A dispositional order was entered, which made the minors wards of the court and DCFS was appointed as their guardian.

¶ 8    A March 1, 2023, permanency review report indicated that respondent had a pending burglary charge stemming from an incident that occurred in August 2022. She was unsuccessfully discharged from the substance abuse treatment program in October 2022 due to nonattendance. She subsequently reengaged with treatment by completing a new assessment and was scheduled to attend two telehealth group sessions per week, which she was complying with. Respondent completed a mental health assessment, which concluded that no mental health services were necessary; however, it was recommended that she undergo a psychological evaluation. She participated in parenting education and submitted to drug screens, some of which tested positive for cannabis. Respondent admitted to using cannabis to manage her anxiety. She attended all scheduled visits and cooperated with DCFS. The children appeared happy in their foster care placement and were brought up to date on their medical exams and immunizations. The recommended goal was to return home in 12 months, which the circuit court adopted during a permanency review hearing on March 7, 2023.

¶ 9    On May 4, 2023, a permanency review report was submitted, indicating that respondent had successfully completed substance abuse treatment and was participating in parenting education. She obtained employment at Dollar General, secured housing, and attended all

3

scheduled visits. The children's medical examinations and immunizations were current, and they appeared to be thriving in the foster home. The recommended goal was return home within 12 months, which the court adopted during a permanency review hearing on May 16, 2023.

¶ 10   On August 7, 2023, a permanency review report revealed that respondent was terminated from her employment at Dollar General due to the theft of merchandise valued at over $1,000, for which she was subsequently arrested and charged. She continued to visit with the children and was maintaining a substance-free lifestyle. The children were reported to be doing well; however, the caregivers had indicated a desire to have them relocated, and DCFS had identified a potential new placement. The goal remained return home in 12 months, which the circuit court adopted on September 25, 2023, at a permanency review hearing.

¶ 11   A permanency review report filed on December 22, 2023, stated that respondent was sentenced on her burglary charge to 180 days in jail, "which was held contingent until her remission hearing 11/19/2024," and 36 months Treatment Alternatives for Safe Communities (TASC) probation. She continued to maintain her two-hour supervised visits with the children. Due to a relapse in August 2023, she had reengaged in substance abuse treatment. Her drug screens from September 22, 2023, to October 31, 2023, were negative for all substances. She also had reengaged in parenting education and was scheduled to obtain a new mental health evaluation. The children were placed with fictive kin on August 9, 2023, and were reported to be doing well and thriving. They transitioned well into the new home and were bonded with the foster parents. The recommended goal was return home in 12 months.

¶ 12   A subsequent report dated February 14, 2024, indicated that respondent's visits had become inconsistent. In January 2024, she tested positive for methamphetamine and amphetamine and was required to undergo inpatient treatment, from which she was unsuccessfully discharged

due to dishonesty and theft. Respondent's probation for the burglary charge was revoked, owing to her positive drug tests. Her participation in parenting education remained inconsistent, and she was unemployed. The children continued to do well in the foster care placement and maintained a bond with the foster parents. Return home within 12 months remained the recommended goal.

¶ 13     On April 9, 2024, a permanency review report filed with the circuit court revealed that respondent had missed her appointments with her caseworker, had not visited the children since February 19, 2024, and failed to attend several drug screens over a two-month period. The children were thriving in their foster home and attending school. The recommended goal was return home in 12 months.

¶ 14     On April 22, 2024, the State filed a motion seeking a finding of unfitness and for termination of parental rights, alleging that respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minors (750 ILCS 50/1(D)(b) (West 2022)); (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward the return of the minors to respondent (*id.* § 1(D)(m)(ii)). On February 4, 2025, respondent admitted and stipulated that she failed to make reasonable progress toward the return of the minors. On February 5, 2025, an order was entered memorializing the stipulation, finding that respondent was an unfit parent.

¶ 15     A best interest hearing was held on May 6, 2025. Jenna Kraus, a caseworker from DCFS, testified that the children were in an adoptive, fictive kin placement. She stated that the children were bonded with their foster parents, whom they referred to as "mom" and "dad." Kraus emphasized that it was in the best interests of the children to terminate parental rights and to proceed with adoption.

5

¶ 16    During cross-examination, Kraus indicated that respondent had been visiting the children "for a couple months now," and continued doing so unless she was incarcerated or undergoing treatment. Before the recent three to four months of visits, respondent had not visited the children for a period of at least one to two years. However, when she visited, respondent was well-prepared and actively engaged with the children. Although Kraus was unable to characterize the visits as "overly warm," she observed that respondent interacted appropriately with the children. Kraus expressed concerns regarding the respondent's dishonesty (but did not elaborate) and was apprehensive about respondent having all of her children in her care. Respondent had discussed the legal proceedings with the children and had informed them that they would be returning home. However, the children had not expressed a desire to reside with respondent.

¶ 17    Upon examination by the circuit court, Kraus testified that the children were enrolled in school and were thriving. Their foster family offered support, and the children participated in church and community activities. Although the children had not explicitly expressed a desire for adoption, they indicated they were very happy, and they were loved and felt safe. Respondent, who was present in person, but in the custody of the Moultrie County jail, did not testify.

¶ 18    After hearing arguments from counsel, the circuit court identified several of the factors pertaining to the children's best interests that it had to consider. The court affirmed that the children were in a secure environment and receiving appropriate care. It observed that the children had developed strong bonds with their caregivers and that no safety concerns existed. The circuit court recognized the children's attachment to their foster parents, acknowledging that they referred to them as their parents. The circuit court emphasized the importance of permanence for the children, highlighting that their current placement was stable and that remaining in such an environment would serve their best interests. The circuit court concluded that the State had met its burden of

proof and determined that it was in the best interests of the minor children for respondent's parental rights to be terminated. A written order consistent with the court's finding was entered on May 8, 2025. On May 30, 2025, respondent timely filed a notice of appeal.

¶ 19                                    II. ANALYSIS

¶ 20    Counsel on appeal first contends, pursuant to *Anders v. California*, 386 U.S. 738 (1967), that there are no meritorious arguments concerning the unfitness determination, as respondent stipulated that she was unfit and so "any argument that the decision was against the manifest weight of the evidence would be frivolous and unreasonable." Regarding the finding of the children's best interests, respondent contends that the State failed to present sufficient evidence to meet its burden of proof. She argues that Kraus appeared to lack substantial knowledge regarding the children and that Kraus acknowledged that respondent had been visiting with them. Respondent further notes that it was not until the circuit court inquired specifically about several of the best interest factors that Kraus discussed them. However, Kraus still failed to offer detailed information. Respondent concludes that, given Kraus's apparent lack of knowledge and the insufficiency of the evidence presented by the State, the circuit court's determination that termination of her parental rights was in the children's best interests was against the manifest weight of the evidence. She requests that the judgment of the circuit court be reversed.

¶ 21    In response, the State initially contends that respondent's brief failed to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) due to the omission of citations to legal authority to support her argument, and that there needed to be "more specific testimony to support termination." The State further argues that this deficiency should result in a forfeiture of respondent's arguments. Additionally, the State asserts that an examination of the best interest factors demonstrates that termination of respondent's parental rights is in the best interests of the

7

minor children. It emphasizes that the children have been out of respondent's custody for a long period of time, and accordingly requests that the judgment of the circuit court be affirmed.

¶ 22    We initially consider the State's request that respondent's arguments be deemed forfeited due to her failure to cite legal authority in support of her contentions on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) mandates that arguments include citations to authority. Although respondent does not cite authority for all of her contentions on appeal, the absence of such citations in this instance does not impede our review of the issues. "The merits of the present case can be readily ascertained from the record on appeal and, accordingly, we choose to reach the merits." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Consequently, we deny the State's request to deem respondent's arguments forfeited and proceed to analyze the circuit court's findings.

¶ 23    Proceedings concerning the termination of parental rights are governed by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2022)). "Generally, under the Juvenile Court Act, where a child is adjudicated abused, neglected or dependent, and the State seeks to free the child for adoption, unless the parent consents, the State must first establish that the parent is 'unfit' under one or more of the grounds set forth in the Adoption Act." *In re D.T.*, 212 Ill. 2d 347, 352 (2004); 705 ILCS 405/2-29 (West 2022); 750 ILCS 50/1(D) (West 2022). "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. In the present case, respondent admitted to being an unfit parent due to failure to make reasonable progress towards the return of the minors. On appeal, her appointed appellate counsel requests that this court affirm the determination of unfitness, citing that, under *Anders*, he cannot contest this finding absent a meritorious issue. A review of the proceedings conducted on

May 6, 2025, indicates that the respondent verbally acknowledged her understanding that she was admitting to unfitness, understood her rights that she would be giving up concerning a hearing, and affirmed that no one had forced or threatened her into her admission. Given that respondent's admission of unfitness was voluntary, we concur with appointed counsel and find the circuit court's determination of unfitness was not against the manifest weight of the evidence.

¶ 24 After the finding of unfitness, the circuit court has to determine whether it is in the best interests of the minors to terminate parental rights. *In re D.T.*, 212 Ill. 2d at 352; 705 ILCS 405/2-29(2) (West 2022). At this stage, the State had to prove, by a preponderance of the evidence, that termination of parental rights was in the children's best interests. *In re Deandre D.*, 405 Ill. App. 3d 945, 953 (2010). "[T]hat determination will not be reversed unless it is against the manifest weight of the evidence." *Id.* "A best-interest determination is against the manifest weight of the evidence only when the opposite conclusion is clearly the proper result." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 65.

¶ 25 To determine whether it was in the children's best interests, the circuit court was to consider the following factors:

"(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel love, attachment, and a sense of being valued);

9

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3 (4.05) (West 2022)

¶ 26    "Once evidence of parental unfitness has been found, *all* of the parent's rights must yield to the best interests of the child." (Emphasis in original.) *In re T.G.*, 147 Ill. App. 3d 484, 488 (1986). In this case, the circuit court, at the time of issuing its decision, explicitly recognized the necessity of considering various best interest factors and enumerated some in its analysis. It articulated that the children are in a safe environment where they receive proper care. The court acknowledged that the children have formed strong bonds with their foster parents and have "background ties, such as family, culture, religion, school, friends, et cetera." It observed that the children referred to their foster parents as "mother" and "father," demonstrating their attachment. The circuit court also noted that "[t]he children do need permanence, and that is a factor." The circuit court's observations, corroborated by the evidence presented, were consistent with the best interest factors it was required to consider.

10

¶ 27    Furthermore, a best interest report submitted on April 9, 2025, substantiates the findings of the circuit court. J.C. is thriving in the foster home, and her teacher reports that she is doing very well, noting that she is "coming out of her shell." She is healthy and is current with her medical examinations and vaccinations. P.C. attends preschool and has received all necessary immunizations. She shares a strong bond with her foster family and feels safe in the home. Conversely, respondent has not maintained sobriety, as demonstrated by random drug screenings and the birth of a substance-exposed infant in November 2024. Additionally, respondent did not complete her services. The report emphasizes that the children have been in foster care for over 1,000 days and are entitled to permanency.

¶ 28    Despite the foregoing, respondent asserts that Kraus lacked adequate knowledge regarding the factors pertaining to the children's best interests. We disagree, as the circuit court was able to verbally evaluate at least five of the best interest factors based on Kraus's testimony. Furthermore, the absence of an explicit statement by the circuit court for each enumerated best interest factor does not imply that these factors were not proven. " 'The [juvenile] court's best interest determination need not contain an explicit reference to each of these factors.' " *In re M.W.*, 2019 IL App (1st) 191002, ¶ 61 (quoting *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19). No evidence has been presented to substantiate the claim that, because of the asserted lack of knowledge of Kraus, the court was unable to consider all relevant factors in its analysis.

¶ 29    Respondent further raises issue with the circuit court conducting its own questioning of Kraus. This argument is not well taken as "a trial court is justified in questioning witnesses when the court's purpose is to clarify issues." *People v. Faria*, 402 Ill. App. 3d 475, 479 (2010). This precisely describes the proceedings in this case. The circuit court simply sought to obtain further clarification concerning the best interest factors, and we find no error in its inquiry.

11

¶ 30     " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' " *In re Deandre D.*, 405 Ill. App. 3d at 953 (quoting *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004)). Based on a review of the entire record, there is nothing to support respondent's argument that the circuit court's finding that it was in the best interests of the minors to terminate respondent's parental rights was against the manifest weight of the evidence.

¶ 31                                    III. CONCLUSION

¶ 32     For the foregoing reasons, we affirm the Moultrie County circuit court's orders of February 5, 2025, and May 8, 2025.


¶ 33     Affirmed.